IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STANFORD O. FRANKLIN          :

v.                            :          Civil No. CCB-04-2042

KEVIN P. CLARK                :

## MEMORANDUM

Stanford Franklin filed a complaint against former Commissioner of the Baltimore Police Department ("BPD") Kevin Clark, in his personal capacity, and current Commissioner of the BPD Leonard Hamm, in his official capacity.[1]  Franklin alleges that he was retaliated against in violation of 42 U.S.C. § 1983 and Md. Constitution, Declaration of Rights, Art. 24 for exercising his right to free speech; that his due process rights were violated under both federal and Maryland state law when he was terminated; and that he was subject to abusive discharge. Franklin is seeking both monetary damages and injunctive relief reinstating him to a position

---

[1] Franklin initially filed suit against Clark, the Commissioner for the BPD, in both his personal and official capacities. After this complaint was filed, Clark was terminated and was replaced as Commissioner by Hamm. Franklin's first attempt to substitute Hamm was denied because at that time, Hamm was only serving as acting Commissioner and no permanent replacement for Clark had been named. Franklin has filed a second motion for leave to file a third amended and restated complaint substituting Hamm, in his official capacity as Commissioner of the BPD, as a defendant. Because Hamm is now the permanent Commissioner of the BPD, Franklin's motion for leave to file third amended complaint will be treated as a motion for substitution and granted, pursuant to Fed.R.Civ.P. 25(d), to substitute Hamm for Clark as the proper defendant in Franklin's suit against the BPD. In addition, Franklin also attempted to add the BPD as a defendant in this case. Franklin's attempt to add the BPD will be denied.

1

within the BPD. Franklin has filed a partial motion for summary judgment claiming that his property interest in his job at the Baltimore City Police Department was taken from him without due process. In response, the defendants have filed a motion to dismiss Franklin's claims. In addition, the defendants have filed a motion to disqualify plaintiff's counsel, Howard Hoffman. For the reasons that follow, the defendants's motion to dismiss will be granted in part and denied in part, the defendant's motion to disqualify will be denied without prejudice, the plaintiff's motion for partial summary judgment will be denied without prejudice, and discovery will proceed.[2]

## BACKGROUND

Franklin was employed by the BPD from March 2000 until January 2004. (Third Am. Compl. ("Compl.") ¶ 6; Pl.'s Mot. for Partial Summ. Judg. ("Pl.'s Mot.") Ex. 1). Franklin entered the BPD at the rank of major when he was appointed by Edward Norris, the former BPD Comissioner. (Compl. ¶ 7-8; Pl.'s Mot. Ex. 1, Franklin Aff. ¶ 2). In July 2001, Norris appointed him to the rank of Lieutenant Colonel. (*Id.*) Norris resigned late in 2002, and there was speculation that Franklin might be his replacement. (Compl. ¶ 9). Instead, Clark was appointed to the position. (*Id.* at ¶ 10).

In 2003, Clark publicly stated to Baltimore Mayor Martin O'Malley that he wanted the City to purchase one hundred additional automobiles for the BPD. (*Id.* at ¶ 16). In July, Franklin prepared a written analysis of BPD's fleet of automobiles and, at Clark's invitation,

---

[2]Because Franklin's claims will not be dismissed and discovery will be proceeding, I will not be addressing whether Clark, in his personal capacity, is entitled to qualified immunity or whether Hamm, in his official capacity, is protected by sovereign immunity. These issues may become relevant, however, and will be addressed at the appropriate time.

presented this analysis to Mayor O'Malley at an August 2003 meeting. (*Id*. at ¶ 17-19). Clark had not viewed Franklin's analysis at this point. (*Id*. at ¶ 19). Franklin concluded that the BPD's fleet was adequate, if properly managed, and that take home vehicles should not be assigned based on an officer's rank. (*Id*. at ¶ 20). Franklin believed he was alerting the Mayor to a wasteful and inefficient practice. (*Id*. at ¶ 34). Following the meeting, Franklin heard that Clark was not happy with his analysis because it contradicted Clark's request in front of the mayor. (*Id*. at ¶ 21). Soon after, Franklin's staff was ordered to stop their analysis, this responsibility was given to the Chief of Patrol, and Clark told Franklin he wanted his commanders to have take-home cars. (*Id*. at ¶ 22).

On December 12, 2003, First Deputy Mayor Enright requested that Franklin provide him with an update on his fleet analysis and recommendations. (*Id*. at ¶ 24-25). First Deputy Mayor Enright also requested information regarding the take home privileges of certain BPD employees. (*Id*. at ¶ 26). At a meeting at City Hall, where Mayor O'Malley was in attendance, First Deputy Mayor Enright questioned Clark about the take home privileges of the BPD division supervised by Chief Romano, who Franklin claims is one of Clark's "cronies." (*Id*. at ¶ 28-29). According to Franklin, "the information provided by Romano was deficient and known to be deficient by Clark." (*Id*. at ¶ 30). Almost immediately after the meeting, Clark summarily fired Franklin, claiming to have been embarrassed by the questions he faced. (*Id*. at ¶ 31; Franklin Aff. ¶ 3).

Franklin was fired without an investigation, notice, an opportunity to respond, or an opportunity to accept a position at a lower level than command level. (Compl. ¶ 31). Franklin claims that at the time he was fired, he was performing his job satisfactorily, (*Id*. at ¶ 33), and

3

was a sworn member of the BPD with full certification from the Maryland Police Training Commission. (Franklin Aff. 1 ¶ 4). Since his termination, Franklin's requests for reinstatement or a hearing to clear his name have been denied. (Compl. ¶ 39).

Franklin alleges that Clark, "as the actual principal decisionmaker of the BPD, has exhibited a consistent custom, pattern, practice, and use of hostility and retaliation to those who are involved in matters of public concern and who disagree with Defendant Clark's position." (*Id*. at ¶ 44). As an example of this custom, Franklin describes an allegedly retaliatory investigation into an officer who expressed concern that another officer was involved in an unjustified shooting.[3] (*Id*. at ¶ 45).

## ANALYSIS

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also Edwards,* 178 F.3d at 244. In addition, because the court is

---

[3]This dispute is currently pending before Judge Davis. (*Andrews v. Clark*, Civil No. AMD-04-3772). Although Hoffman is representing the plaintiff, the BPD has not filed a motion to disqualify him in that case.

testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions.  *See e.g., Young v. City of Mount Ranier,* 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions); *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).

**Free Speech Retaliatory Discharge Claims (Counts I and II)**

Franklin argues that he was fired because he exercised his First Amendment right to free speech by raising an important issue of public concern to the Mayor and First Deputy Mayor regarding the inefficient use of take home vehicles by commanders and his opinion contradicted and embarrassed Commissioner Clark.  (Compl. ¶ 34, 49-50).  Franklin alleges that Clark retaliated by terminating him in violation of 42 U.S.C. § 1983 and the Md. Constitution, Declaration of Rights, Art. 40.[4]  In response, the defendants argue that Clark's speech was not constitutionally protected because he was speaking as an employee on an internal policy dispute, rather than as a citizen speaking on a matter of public concern.

The Fourth Circuit has explained that,

---

[4] The Maryland Court of Appeals has stated that "the freedoms protected by Article 40 of the Maryland Declaration of Rights have been interpreted by this court to be co-extensive with the freedoms protected by the First Amendment." *Jakanna Woodworks, Inc. v. Montgomery County*, 689 A.2d 65, 70 (Md. 1997) (citing *Freedman v. State*, 197 A.2d 232, 235-36 (Md. 1964)).  *See also DiPino v. Davis*, 729 A.2d 354, 367 (Md. 1999).  Consequently, Franklin's Article 40 retaliation claim will be viewed under the same analysis as his First Amendment retaliation claim under § 1983, subject to any differences between federal and state law regarding qualified immunity that may exist.  *See Ritchie v. Donnelly*, 597 A.2d 432, 444-46 (Md. 1991).

> It is well settled that citizens do not relinquish all of their First Amendment rights by virtue of accepting public employment.  Nevertheless, the government, as an employer, clearly possesses greater authority to restrict the speech of its employees than it has as sovereign to restrict the speech of the citizenry.  A determination of whether a restriction imposed on a public employee's speech violates the First Amendment requires "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  This balancing begins with an inquiry into whether the speech at issue was that of a private citizen speaking on a matter of public concern.  If so, the court must next consider whether the employee's interest in his First Amendment expression outweighs the employer's interest in what it has determined to be the appropriate operation of the workplace.
>
> To determine whether speech involves a matter of public concern, we examine the content, form, and context of the speech at issue in light of the entire record.  Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community.  The public-concern inquiry centers on whether "the public or the community is likely to be truly concerned with or interested in the particular expression."  Whether speech addresses a matter of public concern is a question of law for the court."

*Kirby v. City Of Elizabeth City, North Carolina*, 388 F.3d 440, 445-446 (4th Cir. 2004) (en banc)(internal citations omitted).  On February 28, 2005, the Supreme Court granted certiorari to review the Ninth Circuit's decision in *Ceballos v. Garcetti*, 361 F.3d 1168 (9th Cir. 2004), *cert. granted*, 73 U.S.L.W. 3247 (Feb. 28, 2005) (No. 04-473).   One of the questions before the Supreme Court in *Ceballos* is:

> Should a public employee's purely job-related speech, expressed strictly pursuant to the duties of employment, be cloaked with First Amendment protection simply because it touches on a matter of public concern, or should First Amendment protection also require the speech to be engaged in "as a citizen", in accordance with this Court's holdings in *Pickering v. Board of Education*, 391 U.S. 563 (1968) and *Connick v. Myers*, 461 U.S. 138 (1983)?

While *Ceballos* presents a different factual situation, the Court's opinion in that case may be important in determining whether Franklin's speech is constitutionally protected.  (*See* docket entry no. 44).  Accordingly, because this case represents a close question based simply on the allegations in the complaint, I will deny the motion to dismiss counts I and II without prejudice

6

at this time. Discovery, however, will proceed as requested by the defendants. (*See* docket entry no. 45). This issue may be revisited at an appropriate time through a renewed motion to dismiss or a motion for summary judgment.

**Procedural Due Process Claims (Counts III, IV, V, VI)**

Franklin alleges that his termination, without a hearing or investigation and/or a return to a non-command level rank, violated his due process rights under the Fourteenth Amendment. (Compl. Count III). In addition, Franklin alleges that his termination violated his due process rights under the Fourteenth Amendment because there was an implied mutual understanding that command level officials were entitled to investigation and/or a return to a non-command level rank.[5] (Compl. Count V). Franklin has filed a motion for partial summary judgment with respect to his due process claims and the defendants have filed a motion to dismiss those claims.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569 (1972). An employee of a state or local government has a protected property interest in continued public employment only if he can show a "legitimate claim of entitlement" to his job under state or local law. *Id.* at 577. A public employee in an at-will position cannot establish such an entitlement, and thus cannot claim any

---

[5]Counts IV and VI of Franklin's complaint were brought under Md. Constitution, Declaration of Rights, Art. 24 and are similar to counts III and V, which were brought under the Fourteenth Amendment of the United States Constitution. The Maryland Court of Appeals has stated "that Article 24 of the Maryland Declaration of Rights and Fourteenth Amendment of the United States Constitution have the same meaning, and that the Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24." *Pitsenberger v. Pitsenberger*, 410 A.2d 1052, 1056 (Md. 1980). Consequently, Franklin's state due process claims will be viewed in the same manner as the corresponding federal due process claims.

Fourteenth Amendment due process protection.  *See Pittman v. Wilson County,* 839 F.2d 225, 229 (4th Cir. 1988); *Rogosin v. Mayor, City Council of Baltimore,* 197 F.Supp.2d 345, 353 (D. Md. 2002); *Elliott v. Kupferman,* 473 A.2d 960, 966 (Md. Ct. Spec. App. 1984).

As a general rule, state and local employees, including police officers, are considered at-will under Maryland law.  *See Bowers v. Town of Smithsburg, Md.,* 990 F.Supp. 396, 398 (D. Md. 1997); *Elliott,* 473 A.2d at 966.  Officers in Baltimore City, however, are provided with a property interest under Md. Code of Public Local Laws of Baltimore City, Art. 4 § 16-11, which states that "[a]ll members of the Department, except those serving at the pleasure of the Commissioner...shall be retained in the Department during good behavior and efficiency and may be dismissed or removed, from the Department only for cause."  Franklin initially was appointed as a Major with the BPD, and later was appointed to the position of Lieutenant Colonel.  As a result, Franklin served as Lieutenant Colonel at the pleasure of the BPD Commissioner and could be removed from his position without cause.  *See* Md. Code of Public Local Laws of Baltimore City, Art. 4 § 16-7(3) (stating "[t]he authority herein vested in the Police Commissioner shall specifically include...the following: To appoint without examination and to serve *at his pleasure* during satisfactory performance, Deputy Commissioners and other ranks and positions above the rank of captain") (emphasis added).  Although appointed command level officers serve at the pleasure of the Commissioner, the Public Local Laws state:

> the Commissioner may make any appointment to the Department above the rank of captain, without examination, except that no such position shall be filled by a police officer within the Department of a rank less than lieutenant, and where any such appointment is made the police officer so appointed shall, upon the termination of his service in such position, be returned to the rank from which he was elevated, or to such higher rank as he became eligible to serve in during his appointment.

8

*Id*. at § 16-10(d). Franklin claims that because he became eligible to serve as a Lieutenant during his appointment, Clark had the authority to demote him to Lieutenant but did not have the authority to terminate him altogether. As a Lieutenant, Franklin would have a property interest in his job, which would entitle him to due process because Lieutenants do not serve at the pleasure of the commissioner.[6] In response, the defendants argue that Clark had no obligation to

---

[6]There is some question as to whether Franklin would have a property interest in his position, even if he were reduced to the rank of Lieutenant. The defendants argue that the Public Local Laws are preempted by the Law Enforcement Officers' Bill of Rights ("LEOBR"), which provide police officers with no property interest in their employment. *See Elliott,* 473 A.2d at 967. *See also* Md. Code. Ann., Pub. Safety, § 3-103 (stating "[a]ny local law is preempted by the subject and material of [LEOBR]"); *Moats v. City of Hagerstown*, 597 A.2d 972, 975 (Md. 1991). The LEOBR, however, does not "preempt" the Code of Public Local Laws of Baltimore City, because, unlike other local laws in Maryland, the Public Local Laws of Baltimore City were also enacted by the General Assembly. *See Police Com'r of Baltimore City v. Dowling*, 379 A.2d 1007, 1010 (Md. 1977) (stating the LEOBR and the Code of Public Local Laws of Baltimore City "were both passed by the General Assembly. The preemption doctrine is concerned with enactments by or for political subdivisions on the one hand and public general laws on the other.... The statute granting the power to the Commissioner here being a public general law, the preemption argument is without merit"). Nonetheless, to the extent that there may be a conflict between the two laws, the LEOBR supersedes the Code of Public Local Laws of Baltimore City. *See Baltimore City Police Dep't v. Andrew*, 566 A.2d 755, 759-60 (Md. 1989); Md. Code Ann., Public Safety, § 3-102(a) (this subtitle supersedes any other law of the State, a county, or a municipal corporation that conflicts with this subtitle).
   Under Maryland law, "[w]here two statutes deal with the same subject matter as here, they must be construed together if they are not inconsistent with one another. Thus, to the extent possible, full effect should be given to each.... This is true notwithstanding the fact that the statutes may have been enacted at different times with no reference to each other, because in that case the rule is that statutes must be harmonized to the extent possible." *Dowling*, 379 A.2d at 1011. Therefore, the question is whether the two statutes can be harmonized together or whether the provisions at issue are in conflict. The LEOBR was intended "to establish an exclusive procedural remedy for a police officer in departmental disciplinary proceedings." *Moats*, 597 A.2d at 975. The provisions of the Code of Public Local Laws of Baltimore City currently at issue are silent as to the procedures required in disciplinary proceedings. Rather, the relevant provisions clarify which officers can be terminated for cause and which serve at the pleasure of the commissioner. *See* Md. Code of Public Local Laws of Baltimore City, Art. 4 §§ 16-7(3); 16-10(d); § 16-11. Because the relevant provisions of the two laws are not in conflict and can be harmonized, the LEOBR arguably does not supersede the provisions of the Public Local Laws at issue in this case.

9

retain Franklin at a lower level because he served at Clark's pleasure; Franklin was merely an at-will employee with no property interest in his employment.

The language of Md. Code of Public Local Laws § 16-10(d) is somewhat unclear as applied to a person in Franklin's position. Further factual and legal development may be useful in clarifying this provision of the Code. Because this case will be going forward with discovery in any event, the defendant's motion to dismiss and Franklin's partial motion for summary judgment will be denied without prejudice with respect to counts III and IV.

Franklin also alleges that even if an explicit property interest in his employment did not exist, a mutual implied understanding existed that command level officers are entitled to a fair and impartial investigation before being terminated and that they may only be terminated for cause. (Compl. ¶ 57-61). In support of this contention, Franklin cites to Clark's statement: "it is a known fact that as a courtesy commanders are given LEOBR even though that (sic) aren't covered by law."[7] (Pl.'s Sur-Reply; Ex. 1, Clark's Verified Compl. 13).

Property interests can exist even without explicit contractual or statutory language. *See Perry v. Sindermann*, 408 U.S. 593, 602 (1972) (stating that "[e]xplicit contractual provisions may be supplemented by other agreements implied from 'the promisor's words and conduct in the light of the surrounding circumstances.'... Just as this Court has found there to be a 'common law of a particular industry or of a particular plant' that may supplement a collective-bargaining agreement, so there may be an unwritten 'common law' in a particular university that certain

---

[7] The Public Local Laws explicitly state that command level officers, like Franklin, serve at a Police Commissioner's "pleasure during satisfactory performance," Art. 4, § 16-7(3), and the LEOBR explicitly excludes individuals who "serve at the pleasure of the Police Commissioner of Baltimore City" from its protection. Md. Code Ann., Pub. Safety, § 3-101(e)(2)(i).

employees shall have the equivalent of tenure." *Id*. at 602 (internal citations omitted).  Even if Franklin's allegations are accepted as true and commanders have an implied right to the benefits of LEOBR, Franklin would not have a claim for a violation of his right to due process because the LEOBR does not provide officers with a property interest in their employment.  *See Elliott,* 473 A.2d at 967 (concluding "as a matter of State law that the procedural requirements embodied in LEOBR do not suffice to give [plaintiff] a property right in his continued employment as a police officer for the Town of Aberdeen").  Because Franklin has no implied property right to continued employment as an officer at the BPD, counts V and VI will be dismissed.

**Wrongful or Abusive Discharge Claim (Count VII)**

Franklin alleges that the defendants wrongfully terminated him in violation of public policy by firing him for exercising his First Amendment rights.  (Compl. ¶ 62).  Under Maryland law, employment is generally at-will and thus subject to termination "at the pleasure of either party at any time."  *Porterfield v. Mascari II, Inc.,* 823 A.2d 590, 602 (Md. 2003).  Maryland law recognizes an exception allowing an employee to bring a tort action for abusive or wrongful discharge when the termination "violates some clear mandate of public policy."  *Id.* (internal quotation marks omitted); *see also Terry v. Legato Sys., Inc.,* 241 F.Supp.2d 566, 569 (D. Md. 2003).  To state a claim for wrongful discharge under Maryland law, a plaintiff must "specifically identify" the public policy which he alleges was violated.  *Terry,* 241 F.Supp.2d at 569 (quoting *Szaller v. Am. Nat'l Red Cross,* 293 F.3d 148, 151 (4th Cir. 2002)).

Franklin has specifically identified the clear mandate of public policy that he alleges the defendants' violated: the First Amendment.  *See Leese v. Baltimore County*, 497 A.2d 159, 172 (Md. Ct. Spec. App. 1985) (stating "[w]e can conceive of no clearer 'mandate of public policy'

11

than the rights spelled out in the United States Constitution") *overruled on other grounds by Harford County v. Town of Bel Air*, 704 A.2d 421, 380 n.8 (Md. 1998). "[T]o the extent that this discharge violated [Franklin's] constitutional rights, it was abusive." *Leese*, 497 A.2d at 172. Accordingly, because the defendants' motion to dismiss Franklin's § 1983 claims, which were based on an alleged violation of Franklin's First Amendment rights, was denied, the defendants' motion to dismiss Franklin's abusive discharge claims also will be denied without prejudice at this time.[8]

**Motion to Disqualify Franklin's Counsel**

The defendants filed a motion to disqualify Franklin's counsel, Howard Hoffman, on November 10, 2004, approximately four months after this suit was initiated. Hoffman served in the Baltimore City Solicitor's Office from February 2002 until November 2003. (Def.'s Mot. to Disqualify, Huskey Aff. ¶ 3). During that time, Hoffman was assigned to represent the BPD on a variety of employment matters. (*Id*. at ¶ 4). He worked on EEOC cases and settlement negotiations and provided general advice and counsel on employment matters. (*Id*. at ¶ 4). The defendants allege that as an attorney for the BPD, Hoffman "was required to become familiar with the Police Department's operations, policies, and procedures relating to employment, as well as the Police Commissioner's practices and decision making." (*Id*. at ¶ 5). Furthermore, Hoffman represented the BPD in *Phillips v. Frazier et al.*, Case No. 24-C-00-000730 (Baltimore City Circuit Court), an employment case involving First Amendment claims against the BPD and former Commissioners. (*Id*. at ¶ 6). Hoffman notes, however, that the *Phillips* case is dissimilar

---

[8]This court has supplemental jurisdiction over Franklin's abusive discharge state law claim under 28 U.S.C. § 1367. Consequently, there is no need to address whether this court has diversity jurisdiction under 28 U.S.C. §1332.

12

because it involved charges of race discrimination, retaliation, and protected speech concerning race discrimination, which occurred in 1997. (Pl.'s Opp. to Def.'s Mot. to Disqualify, Hoffman Aff. ¶ 18)

Additionally, Hoffman states that he had no involvement in either the facts or the legal issues of the current dispute. (*Id.* at ¶¶ 22-27). He notes that he had no involvement regarding the BPD's purchase of new vehicles, and was never asked for or gave information regarding the Commissioner's right to summarily dismiss command level officers. (*Id.* at ¶¶ 12-13). Most of Hoffman's work for the BPD involved charges of discrimination filed against the BPD by civilian employees and sworn police officers. (*Id.* at ¶ 15).

As noted by other judges in this district, "[d]isqualification is a drastic remedy since it deprives litigants of their right to freely choose their own counsel." *Gross v. SES Americom, Inc.*, 307 F.Supp.2d 719, 722 (D. Md. 2004) (citing *Buckley v. Airshield Corp.*, 908 F.Supp. 299, 304 (D. Md. 1995); *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992)). At the same time, courts have a responsibility to "preserve the public's confidence in the judicial system." *Buckley*, 908 F.Supp. at 304. As a result, courts must find a "'balance between the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community.'" *Id.* (quoting *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F.Supp. 724, 729 (E.D. Va. 1990)). Finally, the defendants bear "a high standard of proof to show that disqualification is warranted" because it is such a drastic measure. *Buckley*, 908 F.Supp. at 304 (quoting *Tessier*, 731 F.Supp. at 729).

The applicable rule governing the present dispute is Rule 1.11 of the Maryland Rules of

13

Professional Conduct (MRPC).[9]  While MRPC 1.9 governs most conflicts involving former clients, MRPC 1.11 is the appropriate rule in this situation because it governs conflicts that result from successive government and private employment.[10]  Rule 1.11(a) states that "a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee."  There is no evidence that Hoffman participated in any way in the present matter while he was an attorney for the BPD, nor does the BPD allege that he did.  In fact, Hoffman was no longer working at the BPD when Franklin was terminated, and he had no knowledge of the events leading up to Franklin's termination. (Hoffman Aff. ¶¶ 24-26).

The defendants also rely on Rule 1.11(b), which states:

a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person.

---

[9]The MRPC were rescinded on July 1, 2005, and replaced by the Maryland Lawyers' Rules of Professional Conduct (MLRPC).  Because both parties filed their memoranda prior to that date, both parties relied on the earlier set of rules.  Regardless of which set of rules is applied in this situation, the result would be the same.  Nonetheless, because both parties relied on the MRPC, I will cite to the MRPC in this decision.

[10]The defendants also argue that Rule 1.7, which states that "a lawyer shall not represent a client if the representation of that client may be materially limited...by the lawyer's own interests unless 1) the lawyer reasonably believes the representation will not be adversely affected; and 2) the client consents after consultation," is applicable because of Hoffman's personal bias against the BPD.  Following Hoffman's termination with the BPD, he filed two EEOC complaints and currently has a case against the BPD before Judge Nickerson of this court. (Civil No. WMN-04-3072).  The defendants do not produce any cases that support disqualifying Hoffman under Rule 1.7.  In addition, there is no evidence indicating that Hoffman's prosecution of this case to date has been or will be limited by any bias against the BPD.  As such, Hoffman will not be disqualified under Rule 1.7, provided he assures the court that Franklin is aware of Hoffman's own suits and nonetheless wishes to continue with the representation.

This provision is included because an "unfair advantage could accrue to the private client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service." MRPC 1.11 cmt. It does not appear at this time that Hoffman has any confidential information that he obtained while working for the BPD that could now be used to benefit Franklin. The defendants' motion to disqualify will be denied without prejudice, however, because certain allegations in the complaint refer to the BPD's "custom, pattern, or practice." (Compl. ¶ 44). Any attempt to establish a custom and pattern that draws on confidential knowledge from Mr. Hoffman's period of employment or cases he worked on may result in Hoffman's disqualification.[11]

    A separate Order follows.

| | |
|---|---|
| September 28, 2005 | /s/ |
| Date | Catherine C. Blake |
| | United States District Judge |

---

[11] Hoffman alleges that the defendants should not be allowed to raise the disqualification issue because the defendants' delay in filing the motion to disqualify amounts to a waiver. I disagree. Unlike *Gross v. SES Americom, Inc.*, 307 F.Supp.2d 719 (D. Md. 2004), which involved years of negotiations and a delay of almost one year after suit was filed, the defendants filed their motion to disqualify approximately four months after Franklin's complaint was filed. Furthermore, the plaintiff has not shown how he was prejudiced by the delay, considering that Hoffman received a letter from the City Solicitor on April 6, 2004, notifying him Hoffman that the city was not waiving the alleged conflict. (Def.'s Mot. to Disqualify, Ex. C).