**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| STANFORD O. FRANKLIN | : | |
| | : | |
| v. | : | Civil No. CCB-04-2042 |
| | : | |
| KEVIN P. CLARK, et al. | : | |
| | : | |
| | : | |

**MEMORANDUM**

Stanford Franklin filed a complaint against former Commissioner of the Baltimore Police

City Department ("BPD") Kevin P. Clark, in his personal capacity, and current Commissioner of

the BPD Leonard Hamm, in his official capacity.  Franklin alleges that he was retaliated against

in violation of 42 U.S.C. § 1983 and Md. Constitution, Declaration of Rights, Art. 24 for

exercising his right to free speech; that his due process rights were violated under both federal

and Maryland state law when he was terminated; and that he was subject to abusive discharge.

This court, in its prior opinion,[1] allowed Franklin to proceed on most of his claims and denied,

without prejudice, the defendants' motion to disqualify Franklin's attorney, Howard B. Hoffman.

Currently pending in this case are several motions, including: (1) the defendants' joint

and renewed motion to dismiss plaintiff's third amended and restated complaint; (2) a joint and

renewed motion by the defendants to disqualify the plaintiff's attorney; (3) defendants' joint

motion to seal; and (4) plaintiff's motion to strike Hamm's notice to substitute counsel.  A

hearing was held on the motions on May 8, 2006.   On July 18, 2006, Magistrate Judge Paul W.

Grimm held a hearing on the defendants' joint motion for sanctions for violation of order staying

---

[1] See Memorandum and Order issued September 28, 2005.

1

discovery, at which time he denied defendants' request.[2]

For the reasons that follow, I will grant in part and deny in part the defendants' renewed motion to dismiss, deny the defendants' motion to disqualify, deny the defendants' motion to seal, and deny the plaintiff's motion to strike.

I.   Legal Standard

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244.  In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions.  *See, e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence . . . of a few conclusory legal terms does not insulate a complaint from

---

[2] Defendants, in addition to requesting sanctions, also asked the court to disqualify Howard B. Hoffman, the plaintiff's attorney, due to personal conflicts of interest that violate Rule 1.7 of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC").  Judge Grimm denied this request with regard to the defendants' allegation that a separate lawsuit which Hoffman filed under the Maryland Public Information Act violated a stay Judge Grimm had placed on discovery.  The defendants asserted additional grounds for disqualifying Hoffman pursuant to MLRPC 1.7, which will be addressed in this memorandum.

dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions); *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).

II      Franklin's First Amendment Claims

The defendants have filed a motion to dismiss Franklin's third amended and restated complaint.  In Counts I and II, Franklin argues that he was fired from the BPD because he exercised his First Amendment right to free speech by raising an important issue of public concern to the Mayor and First Deputy Mayor of Baltimore City.  To be more precise, Franklin prepared an analysis of the inefficient use of take home vehicles by BPD commanders.  His opinion on the matter contradicted and publicly embarrassed Clark, who was then the commissioner of the BPD.  In Count VII, Franklin further alleges that he was wrongfully terminated in violation of public policy under the First Amendment.  The court deferred ruling on Franklin's First Amendment claims pending the Supreme Court's decision in *Garcetti v. Ceballos,* __ U.S. __,  126 S.Ct. 1951 (2006).  The Supreme Court rendered its decision on May 30, 2006, and the defendants now contend that the Supreme Court's holding forecloses Franklin's First Amendment claims.

The question in *Garcetti* was whether a prosecutor who told his supervisors about suspected police misconduct lost his First Amendment protection against retaliation because his message was delivered as part of his job.  In response, the Supreme Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their

communications from employer discipline." *Garcetti,* 126 S.Ct. at 1960.  Defendants contend

that because Franklin voiced his alleged First Amendment concerns in a PoliceStat meeting, and

then responded to follow-up correspondence from the Mayor's Office on the same topic, his

speech falls within the scope of *Garcetti*.

Franklin attempts to distinguish his case from *Garcetti,* arguing that further discovery is

needed to factually develop the circumstances surrounding an email communication between

Franklin and Deputy Mayor Michael Enright.  To that end, Franklin identifies two sources of

speech that led to his termination in January 2004.  First, Franklin made a fleet analysis

presentation, expressing his concerns over the use of take home vehicles, at a PoliceStat meeting

in August 2003.  Franklin concedes that this presentation was part of his official duties and

therefore falls within the bounds of *Garcetti.*  Opp., at 2.  Second, Franklin engaged in an email

discussion concerning BPD's fleet with Enright in December 2003, which Clark learned of

during the January 2004 PoliceStat meeting. Opp., at 2; Third Am. Compl. ¶ 24.  Franklin argues

that the email falls outside the scope of his official duties – and therefore outside the scope of

*Garcetti* – because it was sent "after hours" and "after the Plaintiff was removed from his duties

involving fleet analysis."  Opp., at 2.  Franklin's attempt to separate the December 2003 email

from his official duties fails for a number of reasons.

First, the December 2003 email was not a separate communication.  Rather, it was a

continuation of the fleet analysis presentation that Franklin made at PoliceStat in August 2003.

In the first sentence of his email dated December 19, 2003, Enright specifically referenced the

July report stating, "Thanks for addressing some of my questions yesterday concerning the fleet

report issued in July and your December 16, 2003 letter in response to my follow-up memo on

the report."  Opp., at Ex. 1.  Enright expressed his intention to activate the plan that was

previously developed in the July report, noting that while the plan had been placed on hold for

six months, Franklin had "re-started that process."  *Id.*  Hence, the email is linked to the earlier

presentation in July 2003.

Second, even though the email was sent after 5 p.m., it was sent in response to a request

for follow-up information from the Mayor's Office.  Opp., at Ex. 1.  Franklin responded to the

Mayor's Office on Monday, December 22, 2003 via official channels, using the BPD's

electronic mail system.  In his third amended complaint, Franklin admits that in order to fully

respond to Enright's inquiry, he "requested that various Chiefs throughout the BPD provide a

detailed assessment as to their operational necessity for take-home vehicles."  Third Am. Compl.

¶ 25.  Clearly, Franklin relied on his status within the organization to procure this data.  Franklin,

moreover, signed his email "LTC Stanford Franklin, BPD Human Resources," and copied his

response to Colonel Edward Jackson, then Director of Community Relations, and Kenneth

Blackwell, Deputy Commissioner.  Thus, even though Franklin sent the email after hours, the

content and the manner in which the email was sent make it clear that the message was part of

Franklin's official duties.

Third, Franklin contends that the December 2003 email is protected because at the time

of his email exchange with Enright, he already "had been removed from the responsibility of

performing a fleet analysis by Commissioner Clark."  Opp., at 3.  *Garcetti* cautioned that

employers should not be able to "restrict employees' rights by creating excessively broad job

descriptions."  *Garcetti,* 126 S.Ct. at 1961.  That concern, however, is not implicated by the facts

of this case.  At all relevant times, and until his termination in January 2004, Franklin was BPD's

5

Chief of Human Resources.  Franklin does not contend that Clark changed his job description

following the July report.  Instead, Clark simply eliminated one job duty – analyzing the fleet.

Nonetheless, Franklin continued to be responsible for responding to requests for information

from the Mayor's Office and analyzing data requested by the Police Commissioner or the

Mayor's Office.  This is precisely what he did when he responded to Enright's December 2003

email inquiry.  Accordingly, his speech fell within the scope of his official duties.

In sum, no additional discovery on this issue is necessary, because it is clear that

Franklin's speech – both the July 2003 presentation and the December 2003 email – fall within

the scope of his official duties and, by extension, within the scope of *Garcetti.*  Accordingly, his

speech enjoys no First Amendment protection, and Counts I, II, and VII will be dismissed.

II       Qualified Immunity

Franklin claims that his termination, without a hearing or investigation and/or a return to

a non-command level rank, violated his due process rights under the Fourteenth Amendment of

the U.S. Constitution (Count III) and the Maryland Constitution, Declaration of Rights, Article

24 (Count IV).  The defendants have filed a motion to dismiss Counts III and IV on the basis that

they are entitled to qualified immunity.

Government officials performing discretionary functions are entitled to immunity from

liability for civil damages to the extent that "their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."  *Harlow v.*

*Fitzgerald,* 457 U.S. 800, 818 (1982).  When evaluating a claim of qualified immunity, the court

first must consider the threshold question of whether the facts alleged, taken in the light most

favorable to the plaintiff, show that the officer's conduct violated a constitutional right.  *See*

*Saucier v. Katz,* 533 U.S. 194, 201 (2001).  If the plaintiff has stated a constitutional violation,

then the court must consider whether the right was "clearly established" at the time of the

violation.  *See id.* at 201-02.  A right is "clearly established" under this analysis if "it would have

been clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Id.* at 202.  Because qualified immunity is an affirmative defense, Clark must establish that it

would not be clear to a reasonable official that his conduct was unlawful in the situation

presented.

Clark has made this showing.  To the court's knowledge, neither Maryland's state nor

federal courts have addressed Franklin's two due process complaints: (1) that even as a

command-level officer serving at the pleasure of the Commissioner, he was entitled to a hearing

and investigation before he was terminated; and (2) that rather than being terminated, he should

have been demoted to a non-command level rank.

Franklin bases his claims on the Maryland Code of Public Local Laws of Baltimore City

§ 16-10(d), which states in pertinent part,

> the Commissioner may make any appointment to the Department above the rank
> of captain, ... and where any such appointment is made the police officer so
> appointed shall, upon termination of his service in such position, *be returned to
> the rank from which he was elevated, or to such higher rank as he became
> eligible to serve in during his appointment.*

(emphasis added).  Thus, according to Franklin, he should have been demoted to the rank of

lieutenant, not fired.  As a lieutenant, Franklin would have a property interest in his job pursuant

to the Public Local Laws, Art. 4 § 16-11(a), which states that "[a]ll members of the Department,

*except those serving at the pleasure of the Commissioner ...* shall be retained in the Department

during good behavior and efficiency and may be dismissed or removed, from the Department

only for cause..." (emphasis added).  Franklin would therefore have a property interest in his job that would entitle him to due process protection because, as a lieutenant, Franklin would not serve at the pleasure of the commissioner.

Clark, in response, argues that Franklin is not entitled to due process based on the Law Enforcement Officers' Bill of Rights ("LEOBR").  The LEOBR is a state law that provides procedural safeguards to law enforcement officers related to discipline and dismissal.  Md. Code Ann., Pub. Safety, §§ 3-101 to 3-113.   Notably, however, the LEOBR specifically excludes from its protection "an individual who serves at the pleasure of the Police Commissioner of Baltimore City." § 3-101(e)(2)(i).   The subtitle also preempts any local law regarding the same subject matter and LEOBR remedies are exclusive.  *See* § 3-102(b).  Franklin, who last served as a lieutenant colonel, served at the pleasure of the commissioner.  Thus, because Franklin was exempted from the procedural protections of the LEOBR statute and was, therefore, an at-will employee at the time of his separation from BPD, Clark claims he has no procedural due process protection.

There is no case law analyzing the apparent conflict between the LEOBR and § 16-10(d) of the Public Local Laws.  There is, moreover, no case law cited by the parties interpreting § 16-10(d).  Indeed, as the court noted in its September 28, 2005 memorandum opinion, "[t]he language of Md. Code of Public Local Laws § 16-10(d) is somewhat unclear as applied to a person in Franklin's position."  Mem. Op. at 10.   Importantly, the Fourth Circuit has held that "it would be remarkable to hold that a reasonable person, here a chief of police, should have known more constitutional law than United States Circuit Judges and that because he did not he should be subject to the imposition of monetary damages." *Williams v. Hansen,* 326 F.3d 569,

8

579 (4th Cir. 2003).  Under these circumstances, it likewise would be unreasonable to subject

Clark to monetary damages for his decision to discipline and terminate Franklin, without notice

and a hearing, given that the law is unsettled as it pertains to someone in Franklin's

circumstances.  Accordingly, even assuming that Franklin's due process rights were violated,

such rights were not clearly established at the time of his termination.  Clark therefore enjoys

qualified immunity with regard to Franklin's § 1983 claim.

Defendant Hamm, by contrast, does not enjoy qualified immunity because he is being

sued in his official capacity as Commissioner of the BPD.  The qualified immunity defense "does

not extend ... to claims against state actors in their official capacities."  *Sallie v. Tax Sale

Investors, Inc.,* 998 F. Supp. 612, 621 (D. Md. 1998).[3]

Franklin's complaint also alleges violations of Article 24 of Maryland's Declaration of

Rights.  Under Maryland law, a public official who violates a plaintiff's Maryland constitutional

rights may be personally liable for compensatory damages.  *Samuels v. Tschechtelin,* 763 A.2d

209, 230 (Md. App. 2000).  There is no official/individual dichotomy in state constitutional

jurisprudence, and qualified immunity is not available as a defense.

In summary, Clark enjoys qualified immunity, which will shield him from monetary

---

[3]  In their original motion to dismiss, the defendants alluded to the fact that Hamm might
enjoy sovereign immunity, though they do not do so in their joint and renewed motion.  Hamm
does not enjoy sovereign immunity because a state's sovereign immunity does not bar suits
against lesser entities, such as municipalities, which are not arms of the state. *Alden v. Maine,*
527 U.S. 706, 756-57 (1999).  In *Chin v. City of Baltimore,* 241 F. Supp. 2d 546, 548 (D. Md.
2003), this court held that while the BPD is a state agency, it is not entitled to Eleventh
Amendment sovereign immunity because it "is too interconnected with the government of the
City." Franklin, moreover, could bring an action against Hamm in his official capacity for
injunctive relief pursuant to *Ex Parte Young,* 209 U.S. 123 (1908).  Indeed, Franklin seeks
injunctive relief – in the form of reinstatement – from Hamm.

damages pursuant to § 1983 for any violation of Franklin's due process rights under the U.S.

Constitution.  However, Clark may remain as a party subject to money damages for any state

constitutional tort he may have committed, and Hamm may remain in the case under § 1983

because the only claims brought against him are for injunctive relief (*i.e.,* reinstatement).

III.     Disqualification

          On November 10, 2004, Clark filed an initial motion to disqualify Hoffman pursuant to

Rules 1.7, 1.9, and 1.10 of the Maryland Rules of Professional Conduct ("MRPC") and Local

Rule 704, which adopts the MRPC, as well as Article 8, § 4-3(d) of the Ethics Laws of Baltimore

City.[4]  Clark argued that Hoffman could not represent an adverse party against the former

commissioner of the Baltimore City Police Department, as well as the current commissioner in

his official capacity, because Hoffman worked in the Baltimore City Solicitor's Office from

February 2002 until November 2003.  In this capacity, Hoffman worked on various employment

matters for the BPD, including EEOC cases and settlement negotiations.  In response to the

defendant's motion, Hoffman submitted an affidavit attesting that:

> During my tenure, no one ever asked me whether the Plaintiff, or for that matter,
> a hypothetical individual, could be terminated for the reasons alleged in the
> instant lawsuit, or whether the Plaintiff, or a hypothetical individual, could be
> subjected to a summary dismissal.  In fact, I do not recall anyone within the
> Baltimore Police Department asking me for a legal opinion on the right of a
> Police Commissioner to summarily discharge a command level officer.

Pl. Opp., Ex. 1 at ¶ 13.

          Relying on Hoffman's statements, the court issued a memorandum opinion dated

---

[4]  The court relied on the Maryland Rules of Professional Conduct ("MRPC") in its
earlier memorandum opinion.  The MRPC were rescinded on July 1, 2005, and replaced by the
Maryland Lawyers' Rules of Professional Conduct ("MLRPC").  The analysis in this
memorandum is based on the MLRPC.

September 28, 2005, denying without prejudice Clark's motion to disqualify.  The opinion noted

that "[i]t does not appear at this time that Hoffman has any confidential information that he

obtained while working for the BPD that could now be used to benefit Franklin."  Mem. Op. at

15.

 Recent discovery, however, has revealed that Hoffman was involved in confidential

attorney-client communications that address the central issue in this case, *i.e.,* the law that

controls the police commissioner's ability to discipline or terminate a command-level employee.

On November 22, 2005, current Police Commissioner Leonard Hamm produced a memorandum

dated August 8, 2003, written by Hoffman when he was an associate counsel in the Baltimore

City Solicitor's Office, which is addressed to Deputy Commissioner Kenneth Blackwell.  At the

time of the memorandum, Blackwell reported to Clark.  The memorandum also is copied to

Sheila Anderson, Chief Legal Counsel.  In the memorandum, Hoffman wrote that § 16-10 of the

Public Local Laws of Baltimore City "prevents the Baltimore Police Department from outright

terminating a police officer serving in an exempted position, without at least first returning them

to the rank from which they last served."  Def. Mot., Ex. A, at 2.  In this lawsuit, Hoffman has

filed a complaint on behalf of Franklin which alleges that Clark violated Franklin's federal and

state due process rights because "a command level official, such as the Plaintiff and/or

Defendant, have [sic] a right to a fair and impartial investigation and/or to return to a non-

command level rank (Lieutenant or below) if his services are no longer desired."  Third Am.

Compl. ¶ 58.  In essence, Hoffman is suing Clark about the same legal opinion Hoffman

rendered and directed to Clark's deputy commissioner in August 2003.  Defendants contend that

Hoffman's representation is improper, because he is drawing on confidential knowledge that he

obtained from attorney-client communications and attorney work product involving himself, Anderson, Blackwell, and defendant Clark.

Hoffman, in response, claims that the memorandum was written as an abstract of law to explain relevant sections of the Public Local Laws (which were attached thereto).  Hoffman contends that the memorandum was prepared and written as a convenience to the individual reading the laws, in this case Blackwell, and not as an official legal position with respect to any individual.  Pl. Opp., Ex. 1 at ¶ 1.  Indeed, Franklin was not terminated until January 2004, five months after the memorandum was issued, and two months after Hoffman himself had been terminated from the City Solicitor's Office.  Blackwell, moreover, never followed up with Hoffman, despite Hoffman's offer of assistance at the end of the memorandum.  Hoffman estimates that he spent less than an hour on the project.  Finally, Hoffman asserts that he did not recall drafting the memorandum when he prepared his affidavit in response to the earlier motion to disqualify and, thus, he did not deliberately mislead the court when he asserted that he did not provide legal advice on the issues involved in this lawsuit.

The defendants have renewed their motion to dismiss, largely based on the discovery of this memorandum.  As noted by other judges in this district, however, "[d]isqualification is a drastic remedy since it deprives litigants of their right to freely choose their own counsel." *Gross v. SES Americom, Inc.,* 307 F. Supp. 2d 719, 722 (D. Md. 2004) (citing *Buckley v. Airshield Corp.,* 908 F. Supp. 299, 304 (D. Md. 1995); *Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, 146 (4th Cir. 1992)).  At the same time, courts have a responsibility to "preserve the public's confidence in the judicial system."  *Buckley,* 908 F. Supp at 304.  As a result, courts must find a "'balance between the client's free choice of counsel and the maintenance of the

12

highest ethical and professional standards in the legal community.'" *Id.* (quoting *Tessier v. Plastic Surgery Specialists, Inc.,* 731 F.Supp. 724, 729 (E.D. Va. 1990)).  Finally, the defendants bear "a high standard of proof to show that disqualification is warranted" because it is such a drastic measure.  *Buckley*, 908 F.Supp. at 304 (quoting *Tessier*, 731 F.Supp. at 729).

Franklin argues that the defendants lack standing to seek the disqualification of his lawyer.  This argument is incorrect.  In *United States v. Clarkson,* 567 F.2d 270, 271 n.1 (4th Cir. 1977), the Fourth Circuit explained that "it has been held that any member of the bar aware of the facts justifying a disqualification of counsel is obligated to call it to the attention of the court."  *See also Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984) (agreeing with the Fourth and Fifth Circuits that "disqualification may rightly be sought by opposing counsel even though he/she is not representing the aggrieved client.") (citing *Clarkson,* 567 F.2d at 271, n.1; *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.,* 563 F.2d 671, 673 (5th Cir. 1977)); *Essex County Jail Annex Inmates v. Treffinger,* 18 F. Supp. 2d. 418, 431 (D.N.J. 1998) ("the plaintiffs' contention that the defendants are without standing to raise a potential conflict of interest between her and her client must be rejected.").  While the defendants have standing to seek Hoffman's disqualification based on possible violations of the MLRPC, Maryland courts are hesitant to grant disqualification motions, particularly where the opposing party is the sponsor of such a motion, because they can be abused for tactical reasons.  Indeed, "[w]hen an opposing party moves for disqualification of the other party's counsel, the court will take a hard look at such a motion.  The concern is that the opposing party will use such a motion to block, harass, or otherwise hinder the other party's case."  *Klupt v. Krongard,* 728 A.2d 727, 740 (Md. App.

13

1999).  To that end, this court must "closely scrutinize" the disqualification motion.  *Id.*

1.      MLRPC 1.11

The first applicable rule governing the present dispute is Rule 1.11 of the MLRPC.[5]  Rule

1.11(a)(2) states that "a lawyer should not represent a client in connection with a matter in which

the lawyer participated personally and substantially as a public officer or employee."  Franklin

relies on two unpublished cases – *Richards v. Lewis,* 2005 WL 2645001 (D.V.I. 2005) and

*Babineaux v. Foster,* 2005 WL 711604 (E.D.La. 2005)[6] – to demonstrate that Hoffman did not

involve himself "personally and substantially" in the matter that is now pending before this

court.[7]  Pl. Opp., at 2.

In *Babineaux,* a former government attorney for the City of Hammond, Louisiana, filed

an employment discrimination lawsuit on behalf of a private litigant against the city and the

mayor.  The city moved to disqualify the plaintiff's attorney, claiming that when the attorney

worked for the city, he participated in an employment grievance involving the same plaintiff and

the same issues.  *Id.*  at *1.  The city presented confidential letters that discussed the grievance

on which the former attorney had been copied.  *Id.*  at *6.  Importantly, however, the lawyer did

not investigate the plaintiff's complaint nor did he spend substantial time on the matter.  Indeed,

the attorney's involvement was limited to being copied on two letters.  The *Babineaux* court

---

[5] While MLRPC 1.9 governs most conflicts involving former clients, MLRPC 1.11 is the appropriate rule in this situation because it governs conflicts that result from successive government and private employment.

[6] These following unpublished opinions are not cited as precedent.

[7] MLRPC 1.11 is based on ABA Model Rule 1.11.  Other states, like Maryland, have incorporated ABA Model Rule 1.11 into their own rules of professional conduct.  Accordingly, cases from other jurisdictions are relevant to the court's analysis, as the underlying rules are fundamentally the same.

stated that a demonstration of "personal and substantial participation" envisions a "much closer and more direct relationship than that of a mere perfunctory approval or disapproval of the matter in question.  It contemplates a responsibility requiring the official to become personally involved to an important, material degree, in the investigative or deliberative processes regarding the transactions or facts in question." *Id.*, at 5, 6.  Applying this standard, the *Babineaux* court found that the attorney's "cursory involvement" -- which was limited to being copied on the two confidential letters -- did not rise to the level of personal and substantial participation, requiring disqualification under Rule 1.11(a).  *Id.* at 6.

In *Richards,* a former government attorney for the Virgin Islands Police Department ("VIPD") filed a civil rights action on behalf of a private litigant against the Virgin Islands Police Commissioner.  The police commissioner moved to disqualify the former government attorney, pointing to her representation of the commissioner when the litigant previously had filed an unfair labor charge against the police department involving the same subject matter. *Id.* at *1. Among other activities, the attorney sent a letter to the police commissioner requesting information to use in the VIPD's defense.  She also signed the answer to the litigant's complaint, and filed a formal appearance on behalf of the VIPD.  *Id.* at *1-2.  Based on these facts, the court denied the government's motion to disqualify, finding that while the attorney "was unquestionably involved personally as the sole attorney representing the VIPD against plaintiff's [unfair labor charge]," this representation was "limited, pro forma and ultimately nominal." *Id.* at *3.  Indeed, "[t]he [unfair labor charge] never developed to involve [the attorney] in any substantial and meaningful way.  There was simply no 'investigative or deliberative process' in which [the attorney] participated to warrant her disqualification in the present case." *Id.*

15

It also is helpful to review cases where former government attorneys were disqualified pursuant to Rule 1.11(a).  In *United States v. Phillip Morris, Inc.,* 312 F.Supp.2d 27 (D.D.C. 2004), the court disqualified a former Justice Department attorney from representing a tobacco company after the government produced time sheets indicating that the attorney had logged more than 382 hours on substantially related litigation.  In *Dugar v. Bd. of Educ. of the City of Chicago, District 299,* 1992 WL 142302 (N.D. Ill. 1992), the court disqualified an attorney bringing an action by a student who had been expelled because that attorney previously supervised the Chicago Board of Education attorneys who represented the board at student suspension and expulsion hearings.  Likewise, in the companion case of *Porter v. Bd. of Educ. of the City of Chicago, District 299*, 1992 WL 166570 (N.D. Ill. 1992), the court disqualified an attorney who brought a suit on behalf of teachers contesting the board's disciplinary procedures because that attorney previously represented the board in teacher disciplinary actions.

Hoffman's involvement in the present case is much more remote than the cases listed above.  In both *Babineaux* and *Richards,* for example, each attorney's subsequent representation "flow[ed] from the same core of facts" as matters on which the attorneys worked while employed by the government.  *Richards* at *3.  Here, by contrast, Hoffman asserts that he has no knowledge whatsoever concerning the reasons for terminating Franklin, the underlying factual incidents leading up to Franklin's termination, and the defendants' response to Franklin's allegations that he was wrongfully terminated.  Indeed, Hoffman was fired approximately two months before the events giving rise to Franklin's termination.  Hoffman therefore did not, and could not, engage in any "investigative or deliberative process" with regard to Franklin's termination.

Defendants attempt to distinguish *Babineaux* and *Richards* on the basis that, unlike Hoffman, neither attorney rendered a legal opinion on the same matter in their previous service. This argument is not compelling, however, because it focuses on the type of involvement rather than whether that involvement was substantial.  As the plain language of Rule 1.11 makes clear, it is the latter which is the court's concern.  Likewise, while the attorneys in *Dugar* and *Porter* were not acquainted with the factual bases for the particular matters pending before the court, each attorney was "involved in comparable cases in which she would have been privy to the Board's strategic thinking on these matters."  *Porter* at *4.   Hoffman asserts – and defendants do not refute – that Hoffman was not made privy to BPD's internal policy for the discipline and termination of command-level officers.  Finally, Hoffman claims that he spent approximately one hour drafting the memorandum, which is dramatically less than the extent of involvement that disqualified the lawyer in *Phillip Morris.*  Thus, applying the reasoning of these cases, the court does not find that Hoffman was "substantially and personally involved" in the termination of Franklin.  Disqualification is not warranted under Rule 1.11(a).[8]

This does not end the court's analysis, however.  Even if Hoffman did not "personally

------

[8]  The Ethics Laws and Codes of Baltimore City, Article 8, § 4-3(d) also speaks to a government employee's post employment restriction.  The section provides:

> for a period of one year after terminating employment with the City government, a former Mayor, Comptroller, President of the City Council, Municipal Officer or municipal employee, shall not assist or represent a party other than the City for compensation in a case, contract, or other specific matter involving the city government if that matter is one in which the elected official, municipal officer or employee, personally and significantly participated as an elected official, municipal officer, or municipal employee.

Section 4-3(d) imposes the same "personally and substantially" test as Rule 1.11(a).  Thus, to the extent that Hoffman did not violate Rule 1.11(a), he also did not violate § 4-3(d).

and substantially participate" in Franklin's termination, Rule 1.11(c) requires disqualification if he possesses information he knows to be confidential and that information could be used to the material disadvantage of his former client. "Confidential government information" is defined in MLRPC 1.11(c) as "information that has been obtained under governmental authority and which, at the time th[e] Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public." As the court recognized in its earlier memorandum opinion, Rule 1.11(c) is included in the MRPC because "an unfair advantage could accrue to the private client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service." Mem. Op. at 15 (citing MRPC 1.11 cmt.).

When it was created, the memorandum likely was subject to the attorney-client privilege. Clark asked Blackwell, his deputy, for a legal opinion. Blackwell, in turn, asked Anderson for legal advice, and she delegated the question to Hoffman. Importantly, Clark attests that he believed attorneys under the supervision of Anderson who provided Clark with legal advice would be subject to a duty of confidentiality. Def. Mot., Ex. B at ¶ 10. It appears that Hoffman did, in fact, have access to confidential information.

While the memorandum likely constituted a confidential attorney-client communication when it was created the defendants waived any expectation of confidentiality when they voluntarily produced it through the course of discovery. On October 21, 2005, the plaintiff requested the following documents as part of his Fed. R. Civ. Proc. 34 request from defendant Leonard Hamm:

> Request Number Six: Please produce all documents, including but not limited to handbooks, memoranda, manuals, written guidelines, checklists, job aides,

training guides, notices or bulletins, including updates, which discuss, describe, contain, refer or relate in any manner to the procedures used to return command level staff (rank of "Major" or higher) of the BCPD, to a civil service rank, from October 1985 through the present.

Defendant Hamm responded as follows:

Response: See Response to Request Number 4 above.  In addition, the Defendant is aware of a memorandum authored by counsel for Plaintiff that may be responsive.

Hamm then produced the memorandum that is at issue.

The Fourth Circuit has held that where, through discovery, a party discloses information subject to the attorney-client privilege without objection, the privilege is waived. *Edens v. Goodyear Tire & Rubber Co.,* 858 F.2d 198, 200, n.1 (4th Cir. 1988).  At no point did counsel for Hamm invoke the attorney-client privilege with regard to the memorandum.  Nor did counsel raise any objection to disclosure or otherwise attempt to maintain the confidentiality of the memorandum.  Thus, the defendants waived any attorney-client privilege associated with the memorandum.  It therefore would be inappropriate to disqualify Hoffman, because the memorandum no longer contains confidential information.

In addition, the defendants' attempt to disqualify Hoffman pursuant to Rule 1.11(c) interprets a government lawyer's duty to maintain confidential information too broadly.  Take, for example, an assistant U.S. attorney who prosecutes cases pursuant to a criminal statute, and in the course of his work, writes a memorandum to his supervisor questioning the constitutionality of that statute.  Under the defendants' reasoning, if the lawyer left the government, he would be foreclosed from raising the constitutionality of the statute in his representation of a private client, because he would have access to confidential information, *i.e.,* the memorandum.  Such a broad view of what constitutes confidential information pursuant to

19

Rule 1.11(c) would unnecessarily preclude many former government lawyers from representing clients in the private sector, even when doing so would pose no harm to government interests. Yet as the Maryland legislature cautioned, "the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards."  MLRPC 1.11, cmt. 4.

In summary, the court will not disqualify Hoffman pursuant to Rule 1.11.

1.     MLRPC 1.7 and 3.7

Defendants next argue that Hoffman's representation of Franklin suffers from an impermissible conflict of interest in violation of Rule 1.7 of the MLRPC.  Specifically, Rule 1.7 provides in relevant part that "[a] lawyer shall not represent a client if ... there is a significant risk that the representation of [the client] will be materially limited ... by a personal interest of the lawyer."  MLRPC Rule 1.7(a).  According to defendants Franklin has, in numerous instances, engaged in behavior geared toward vindicating the legal opinion he set forth in the August 8, 2003 memorandum.  As a consequence, his personal interest in the outcome of this litigation allegedly has detracted from his representation of Franklin.

Defendants have catalogued the ways in which Hoffman allegedly violated Rule 1.7. First, the defendants refer to Hoffman's lawsuit under the Maryland Public Information Act ("MPIA"), in which he requested billing and defense records for Brown & Sheehan, LLP, counsel for defendant Clark, in the cases "Stanford O. Franklin v. Kevin Clark" and "Michael Andrew v. Kevin Clark."  Def. Mot., at 12-13.  According to the defendants, the MPIA lawsuit does not advance his client's case, but instead exposes Franklin to sanctions for violating an

Order issued by Magistrate Judge Paul W. Grimm staying discovery pending a ruling by this court on defendants' renewed disqualification motion.

Second, the defendants assert that Hoffman confuses his role as an "attorney" in the present lawsuit with his status as a "party" in his own lawsuit against the city.[9]  Def. Mot., at 13-14.  Hoffman, for example, has threatened to use evidence from this case in his own case.  Mot. Ex. J, at 1.  Hoffman also responded to a discovery matter in this case with a reference to how opposing counsel testified in Hoffman's lawsuit.  Mot. Ex. K, at 1.  Thus, while there is no connection between this case and his case, Hoffman allegedly merges them together.

Third, the defendants assert that Hoffman's apparent disagreement with and dislike of the attorneys who supervised him at the Baltimore Police Department is generating a personality conflict with defense counsel.  Def. Mot., at 14.  In numerous instances, Hoffman has attacked opposing counsel personally.  *See, e.g.,* Mot. Ex. M at 7-9; Pls. Opp., at 26-28.  Defendants argue that these repeated personal attacks are not in the best interest of his client.

Finally, the defendants argue that the August 8, 2003 memorandum puts Hoffman in a position where he will have to be called as a witness in this case.  Def. Mot., at 15.  The defendants assert that they will need to depose Hoffman once the discovery stay is lifted.  According to the defendants, this is yet another reason that Hoffman should be disqualified.

Alleged self-interest cases such as this "fall along a wide spectrum of ethical sensitivity from mere potential danger to outright criminal misdeeds."  *Beets v. Scott,* 65 F.3d 1258, 1270

---

[9] Hoffman has sued the City of Baltimore, the Baltimore City Police Department, and individual city employees claiming wrongful discharge relating to his former position as an attorney in the Baltimore City Solicitor's Office.  *See Hoffman v. Baltimore Police Dept.,* 379 F.Supp.2d 778 (D. Md. 2005).

(5th Cir. 1995).  Indeed, "a lawyer's self-interest is, in theory, inherent in every case in which he

participates, and the 'range of possible breaches ... is virtually limitless.'" *Treffinger,* 18 F. Supp.

2d at 431 (D.N.J. 1998), *citing Beets,* 65 F.3d at 1271.  Thus, "[b]ecause of the virtually limitless

cases in which a 'conflict' may theoretically arise when a lawyer's self-interest is implicated,

there is a very real danger of analyzing these issues not on fact but on speculation and

conjecture." *Id.* at 432.  However, "[s]upposition and speculation ... will simply not do." *Id.*

Under this standard, defendants' first three allegations – which essentially assert that

Hoffman harbors ill will against BPD and its lawyers – are not persuasive.  As Judge Grimm

explained during the July 18, 2006 hearing, the Maryland legislature has identified only a few

narrow circumstances in which a personal conflict of interest would disqualify a lawyer from

representing his client.  These include instances where: the lawyer is exploring possible

employment with the opponent of the lawyer's client; the probity of the lawyer's own conduct in

a transaction is in serious question; the lawyer's representation is affected by related business

interests, when for example, when the lawyer refers clients to an enterprise in which the lawyer

has an undisclosed financial interest; the lawyers representing different clients in the same matter

or substantially related matters are related by blood or marriage; and the lawyer has a sexual

relationship with the client.  *See* MRPC 1.7, Comments 10-12.  None of these circumstances is

relevant to the facts of this case.

Hoffman does appear to have a personal investment in vindicating the legal opinion

contained in the August 8, 2003 memorandum.  This does not, however, rise to the level of a

conflict of interest warranting his disqualification.  In *Main Event Productions, LLC v. Lacy,* 220

F.Supp.2d 353 (D.N.J. 2002), another federal court rejected the defendant's assertion that the

plaintiff's general counsel should be disqualified because he played a prominent role in the

negotiations for the contract that was the subject of the lawsuit.  The defendant argued that the

lawyer had an interest in justifying his actions during negotiations to preserve his present and

future employment.  According to the court, however, "[a] conflict of interest which requires

disqualification does not exist merely because an attorney may be personally interested in the

outcome of litigation."  *Id.* at 358.  Insofar as Hoffman seeks to prove that his legal opinion was

sound, defendants have not established that this creates an actual conflict warranting

disqualification for purposes of Rule 1.7.

The Superior Court of New Jersey dealt with nearly analogous facts in *State of New

Jersey v. Davis,* 840 A.2d 279.  In that case, the State of New Jersey moved to disqualify a

public defender as a pool attorney under contract with the Office of Public Defender ("OPD")

from representing three criminal clients.  The state alleged that the attorney had a conflict of

interest, or the appearance of impropriety, because the attorney sued the OPD for violations of

state employment law when he was employed as a public defender.  The court rejected the state's

assertion that as a result of the lawsuit, OPD would fail to adequately supervise the attorney or,

in the alternative, would unjustifiably withhold resources necessary for the attorney to mount a

defense.  Indeed, while the court "recognize[d] that a certain amount of ill will may have been

engendered by [the attorney's] suit ... [the ethics rule] does not prohibit ill will, but only

'tangible conflicts between the lawyer's and the client's interests in the subject matter of the

representation.'"  *Id.* at 286 (internal citations omitted).  Here, Judge Grimm did not impose

sanctions on Hoffman for allegedly violating the discovery stay, so there is no "tangible conflict"

that resulted from Hoffman's MPIA suit.  Likewise, while Hoffman's behavior toward opposing

counsel could charitably be described as unprofessional, it is not so egregious as to warrant the use of disqualification as a sanction.[10]  Finally, while it is understandable that the defendants do not want Hoffman to use information that he collects in this case in his own cause of action against the City, I do not see how Hoffman's use of this information harms his client, which is the issue of concern to the court.

The defendants' fourth allegation – that Hoffman will be called as a witness in this case – potentially is grounds for disqualification under both Rule 1.7 and 3.7.  Rule 3.7 provides, in pertinent part, that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness, unless ... 3) disqualification of the lawyer would work substantial hardship on the client."  MLRPC Rule 3.7(a).  As stated in the Comment: "Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can involve a conflict of interest between the lawyer and the client."  *Id.*  With regard to the mixing of the roles, the Comment continues:

> The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation.  A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others.  It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

*Id.*

Among the factors courts have adopted when deciding motions for disqualification

---

[10]  I agree with Judge Grimm's assessment that while the conduct of Franklin's lawyer has oftentimes been unprofessional, inconsiderate, and rude, there also are several instances where defendants' lawyers engaged in similar behavior.  Judge Grimm's decision to impose monetary sanctions upon either party if their lawyers continue to engage in such inconsiderate and unprofessional behavior is eminently reasonable.  The court also will consider reporting a lawyer who exhibits such behavior to the court's Disciplinary and Admissions Committee.  These potential sanctions are more appropriate than disqualification.

are "the materiality of the advocate-witness's evidence; the exclusivity of the advocate-witness as the source of the evidence; and the prejudice to the advocate-witness's client." *Kluck,* 728 A.2d at 740.  The concern is more significant when the advocate is expected to testify for his own client.  *Id.*

In the course of discovery, Hoffman made inquiries about the attorney communications Clark had concerning the very issue covered by the August 8, 2003 memorandum, *i.e.,* whether Clark could fire, rather than demote, a command-level officer.  Indeed, Hoffman propounded the following interrogatory:

> If you contend that you acted reasonably under the circumstances because you relied on the assistance or advice of an attorney in terminating the Plaintiff, please identify the attorney to whom you relied upon for advice, the date you received that advice, the advice that you received, and whether that attorney's advice was memorialized in any documents.

Interrogatory Number Eighteen, cited in Pls. Opp., at Ex. 1, at 4.

Hoffman contends that he propounded this interrogatory to counter Clark's assertion that he acted reasonably under the circumstances when he terminated Franklin.  This assertion forms the basis of Clark's qualified immunity defense.  Arguably, however, Hoffman already knew that Clark sought the advice of counsel, because it was Hoffman who provided that advice through the memorandum.  If Hoffman used the memorandum as proof that Clark acted unreasonably when he fired rather than demoted Franklin, there is a risk that Hoffman's personal credibility would become an issue in the case.  Indeed, applying the factors listed above, Hoffman could be disqualified.  First, the memorandum is material to Franklin's case, as it could be used to undermine Clark's qualified immunity defense.  Second, Hoffman is the source of the memorandum.  To the court's knowledge, no other City attorney provided the same, or similar,

legal advice.  And third, Franklin could suffer prejudice if the memorandum is not presented at trial because, as stated above, it is the only evidence that could challenge Clark's qualified immunity defense.

Disqualification is not necessary, however, if the memorandum is legally insufficient to overcome Clark's qualified immunity defense.  As explained above, even assuming the interpretation of law expressed in Hoffman's memorandum is correct, and Franklin had a right to be demoted and/or a right to a hearing and investigation before his termination, these rights were not clearly established at the time of Franklin's firing.  In the absence of clear Maryland, Fourth Circuit, or Supreme Court precedent, the legal opinion rendered by a single city attorney under the circumstances Hoffman himself describes amounts to no more than a forecast of how a court *might* view the issue.

In conclusion, there is no reason to admit the memorandum in evidence, because it would not overcome Clark's qualified immunity defense.  I therefore see no reason to disqualify Hoffman pursuant to Rules 1.7 or 3.7 at this time.

IV      Motion to Seal

The defendants have filed a motion to seal papers filed in conjunction with their joint and renewed motion to disqualify Howard B. Hoffman.  Specifically, the defendants seek to seal all papers and proceedings related to the August 8, 2003 memorandum written by Hoffman. Defendants contend that the memorandum is protected by the attorney-client privilege and they have not waived that privilege.  Hoffman opposes the defendants' motion.  For the reasons described above, the defendants waived the attorney-client privilege when they voluntarily produced the memorandum through discovery.  It would therefore be inappropriate to seal the

26

documents in this case.

V.      Motion to Strike Defendant Hamm's Notice to Substitute Counsel

On January 31, 2006, Michael A. Fry, attorney for defendant Leonard Hamm, filed a "Notice of Substitution of Counsel."  Fry, who left the employ of the Office of the City Solicitor, sought to withdraw his appearance and substitute another city attorney, Joanne Woodson-Branche.

Franklin opposes Fry's withdrawal on two grounds.  First, Franklin points out that pursuant to Local Rule 101.2.b, an attorney who has been representing a government entity can only withdraw from a case with leave from the court.  Fry did not request leave to withdraw; instead, he merely filed a "Notice of Substitution of Counsel."  This technical defect does not foreclose the court from granting Fry's request to withdraw.

Second, plaintiff asserts that even if Fry had complied with the Local Rules, there is good cause for the court to maintain jurisdiction over him.  The plaintiff has argued that the joint and renewed motion to disqualify – which was signed by Fry – "was filed frivolously with an intent to harass."  Pls. Mot. to Strike, at 2.  Franklin apparently wants the court to maintain jurisdiction over Fry so it can impose Rule 11 sanctions upon him at some future date.  As there is no merit to Franklin's proposed Rule 11 motion, there is no basis to impose such sanctions on Fry.  His request to withdraw will be granted.[11]

---

[11] I am not suggesting the court would lose jurisdiction over Fry, even if he had committed a violation of Rule 11, by allowing him to withdraw.

A separate order follows.


_____September 29, 2006_____                    _____/s/_____
            Date                                               Catherine C. Blake
                                                               United States District Judge